UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-22642-RNS

STRIKE 3 HOLDINGS, LLC, a limited liability company,

    Plaintiff,

v.

JOHN DOE subscriber assigned IP address 108.227.210.141, an individual,

    Defendant.

_____/

**PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE
THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

    Pursuant to Fed. R. Civ. P. 26(d)(1), Strike 3 Holdings, renews its motion for entry of an order granting it leave to serve a third-party subpoena on AT&T Inc., prior to a Rule 26(f) conference (the "Motion").  Plaintiff initially filed this Motion on August 23, 2018, CM/ECF 9. On October 9, the Magistrate Judge entered an order, which, on the docket reflected an order granting the motion.  However, the attached order inadvertently was an order from a different case.  CM/ECF 12.  On November 26, 2018, the Magistrate Judge vacated that order.  CM/ECF 13.  Plaintiff has filed with the District Court a request for a further extension of time to serve the John Doe Defendant, CM/ECF 14 and now renews its motion so that, with the subpoena to the ISP, Plaitniff can identify the John Doe Defendant and proceed with this litigation.  Plaintiff reasserts the basis for this subpoena that was set forth in the initial motion.

Plaintiff is filing the following attached exhibits in support of this Motion: (1) Declaration of Greg Lansky in support of this Motion, Exhibit A; (2) Declaration of Tobias Fieser in support of this Motion, Exhibit B; (3) Declaration of John S. Pasquale in support of this Motion, Exhibit C; (4) Declaration of Susan B. Stalzer in support of this Motion, Exhibit D; and, (5) Plaintiff's proposed subpoena, Exhibit E. Plaintiff is also submitting a proposed order as Exhibit F and pursuant to the Local Rules is separately submitting the proposed Order in word format to Chambers. Plaintiff states the following in support of this Motion:

## I. INTRODUCTION

Strike 3 is the owner of original, award-winning adult motion pictures featured on its subscription-based websites.[1]  Unfortunately, like many other producers of motion pictures, Strike 3's success is substantially harmed and threatened by users on the Internet illegally infringing its works on a very large scale. Indeed, Strike 3's motion pictures are among the most infringed content in the world. *See* Lansky Decl. ¶ 25.[2]

To address this problem, Strike 3 hired an investigator, IPP International U.G., to monitor and detect the infringement of Strike 3's content.  IPP discovered that Defendant's IP address was illegally distributing numerous motion pictures owned and copyrighted by Strike 3.  Strike 3's independent forensic expert, John S. Pasquale reviewed the evidence captured by IPP and confirmed that Defendant's IP address was involved in an infringing transaction at the exact date and time reported by IPP.  *See generally* concurrently-filed Declaration of John S. Pasquale. Strike 3 only knows Defendant by his or her IP address.  This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party that has the

---

[1] See generally concurrently-filed Declaration of Greg Lansky ("Lansky Decl.").

[2] *See also* Dylan Love, *The Most-Pirated Man in Porn Is Getting Angry*, INVERSE (May 24, 2017), https://www.inverse.com/article/31350-greg-lansky-tushy-blacked-vixen-interview.

information necessary to identify Defendant by correlating the IP address with John Doe's identity.

As a result, Strike 3 now seeks leave to serve limited, immediate discovery on Defendant's ISP, AT&T Inc., so that Strike 3 may learn Defendant's identity, investigate Defendant's role in the infringement, and if warranted by the investigation, effectuate service. Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time. *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("[E]xpedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs.").

Accordingly, Strike 3 hereby seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Strike 3 will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II.   FACTS

### A.   BitTorrent Infringement has a Serious and Damaging Impact on Strike 3

Greg Lansky ("Mr. Lansky") is a member of General Media Systems, LLC, ("GMS"), the parent company that owns Strike 3. *See* Lansky Decl. at ¶ 1. Strike 3 owns the intellectual property to the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. *Id.* at ¶ 3. Strike 3 is owned entirely by Mr. Lansky's company, GMS, and has existed since 2015. *Id.*

Mr. Lansky is the Chief Creative Officer of the Brands. *Id.* at ¶ 1. In 2006, Mr. Lansky moved to the United States from Paris to pursue his dream of creating art in an adult context. *Id.* at ¶ 4. He has always been passionate about photography and cinematography. *Id.* It was a difficult start. Mr. Lansky, who barely spoke speak English, had trouble making connections and finding employment. *Id.* at ¶ 5. Eventually, after tremendous hard work, Mr. Lansky was fortunate to be hired by some of the biggest adult brands in the world. *Id.* at ¶ 6. Through these experiences, Mr. Lansky was able to establish himself and become an expert in the field. *Id.*

In 2013, Mr. Lansky decided to risk everything to create his own company and studio. *Id.* at ¶ 7. After a few years, his brands turned into a multi-million dollar a year business. *Id.* at ¶ 10. His philosophy is to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 12–13. Moreover, Strike 3's motion pictures are known for having the highest production budget of any in the adult industry. *Id.* at ¶ 15.

Because of this, the websites for the Brands have a subscriber base that is one of the highest of any adult sites in the world, with 20 million unique visitors to its websites per month, and have a loyal following. *Id.* at ¶ 10. Strike 3 is also currently the number one seller of adult DVDs in the United States. *Id.* at ¶ 17. Finally, Strike 3's content is licensed throughout the world, including by most major cable networks. *Id.* at ¶ 18. This success has led to numerous awards being bestowed upon Strike 3, such as "adult site of the year," "best marketing campaign – company image," and "best cinematography." *Id.* at ¶ 19. Mr. Lansky himself has also won "director of the year" three years in a row. *Id.*

Unfortunately, piracy is a major threat and causes tremendous damage to Strike 3. As Mr. Lansky succinctly puts it, Strike 3 "can compete in the industry, but we cannot compete when our content is stolen." *Id.* at ¶ 22. To continue to provide value for members, exciting and inspiring projects for adult performers, and to continue to create top paying jobs and growth in the adult community, Strike 3 must protect its copyrights. *Id.* at ¶ 29.

B.  **Strike 3 Brings its Litigation in Good Faith**

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. *Id.* at ¶ 28. Therefore, Strike 3 only files strong cases against extreme infringers. *Id.* at ¶ 29. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content.[3] *Id.* All defendants within the Strike 3 litigation have distributed, at a minimum, at least 15% of Strike 3's entire copyrighted library. *Id.* Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 30. Moreover, Strike 3 does not send demand letters nor make any attempt to contact a defendant prior to service of the Complaint. *Id.*

Finally, although certainly Strike 3 does not believe anyone should be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding content they choose to enjoy.

---

[3] Recently, when evaluating the "deterrence" factor for awarding attorney's fees, the Ninth Circuit noted Congress's policy in favoring private actions to stem online infringement. While discussing The Digital Theft Deterrence and Copyright Damages Improvement Act, Pub. L. No. 106-106, 113 Stat. 1774, the Court of Appeals quoted Representative Coble's concern: "'Copyright piracy . . . is flourishing in the world. With the advanced technologies available and the fact that many computer users are either ignorant of the copyright laws or simply believe that they will not be caught or punished, the piracy trend will continue' absent increased penalties." *Glacier Films (USA), Inc. v. Turchin*, No. CV 16-35688, 2018 WL 3542839, at *14 (9th Cir. July 24, 2018) (finding Congress "rais[ed] the stakes for unlawful digital file-sharing").

Accordingly, Strike 3 has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of cases; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity.  Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests.  *Id.* at ¶ 31.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses.  *Id.* at ¶ 32.  This litigation, or any litigation instituted by Strike 3, is not a business model.  *Id.*  Instead, Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and redirect the infringement back into legitimate sales.  *Id.*  Proceeds that Strike 3 receives from settlements go back into making the company whole, including investing in better pay for artists and performers, better quality productions, and hiring and providing benefits for employees.  *Id.*

### III.     ARGUMENT

#### A.     Legal Standard Governing Expedited Discovery Requests to Identify an Anonymous Defendant

"The Federal Rules of Civil Procedure provide that discovery may commence before the parties have engaged in a discovery conference, if ordered by the court." *Tracfone Wireless, Inc. v. Adams*, 304 F.R.D. 672, 673 (S.D. Fla. 2015) (citing Fed. R. Civ. P. 26(d), (f)). "Federal courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where the party establishes 'good cause' for such discovery." *Id.* (collecting cases).   Courts in this District routinely grant limited expedited discovery in cases such as this where the plaintiff knows only

the defendants' IP addresses.[4]

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 276 (N.D. Cal. 2002)).

> In *Arista Records, LLC v. Doe 3*, the court found that five factors are relevant to determining whether good cause exists for permission to serve such a subpoena as requested by the instant Motion: (1) whether Plaintiff has made out a prima facie claim of copyright infringement, (2) the specificity of the discovery requested, (3) the absence of alternative means to obtain subpoenaed information, (4) necessity for the subpoenaed information, and (5) Defendant's expectation of privacy.

*Malibu Media, LLC v. Doe*, No. CV 14-61955, 2014 WL 12605556, at *1 (S.D. Fla. Nov. 17, 2014) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) (citing *Sony Music Entm't v. Does 1-40*, 326 F.Supp.2d 556, 564–67 (S.D.N.Y. 2004)). "Plaintiff has established that good cause exists, based on the above-referenced factors, for it to serve a third party

---

[4] *See e.g., Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 104.189.92.70, No. CV 18-22641, [DE 10] (S.D. Fla. Aug. 7, 2018 (Torres, M.J.) (granting motion for leave to serve a third-party subpoena); Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 72.28.158.119, No. CV 18-22650, [DE 12] (S.D. Fla. Aug. 6, 2018 (Torres, M.J.) (granting motion for leave to serve a third-party subpoena); Malibu Media, LLC v. John Doe subscriber assigned IP address 66.229.12.94, No. CV 13-62239, 2013 WL 12145943 (S.D. Fla. Oct. 31, 2013) (Scola, J.) (granting motion for leave to serve a third-party subpoena); Malibu Media, LLC v. John Doe subscriber assigned IP address 50.143.121.166, No. CV 14-60133 (RNS) (S.D. Fla. Feb. 6, 2014) [CM/ECF 7]; Plastic the Movie Ltd. v. Doe, No. CV 15-21303, 2015 WL 12843759 (S.D. Fla. May 29, 2015) (same); Manny Film, LLC v Doe, No. CV 15-80306, 2015 WL 2411201 (S.D. Fla. May 20, 2015) (same); Malibu Media, LLC v. Doe, No. CV 14-23142-KMM, 2014 WL 12605503 (S.D. Fla. Sept. 29, 2014) (same); Manny Film LLC v. John Doe, subscriber assigned IP address 174.61.57.43, No. CV 1:15-20895 (RNS) (S.D. Fla. Mar. 16, 2015) [CM/ECF 7]; Hard Drive Prods., Inc. v. Does 1-32, No. CV 11-22206, 2011 WL 13223690 (S.D. Fla. Oct. 24, 2011) (denying motion to quash third-party subpoena); Boy Racer, Inc. v. Doe, No. CV 12-21099, 2012 WL 12886593 (S.D. Fla. June 15, 2012) (same). Courts across the nation have similarly granted analogous requests for leave seeking similar relief. See e.g., Strike 3 Holdings, LLC v. Doe, No. 3: CV 17-1680 (CSH), 2017 WL 5001474 (D. Conn. Nov. 1, 2017); Strike 3 Holdings, LLC v. Doe, No. CV 17-13300 (KM)(MAH), 2018 WL 783071 (D.N.J. Feb. 8, 2018); Strike 3 Holdings, LLC v. Doe, No. CV 18-431-LPS, 2018 WL 1942364 (D. Del. Apr. 25, 2018); In re Various Strike 3 Holdings, LLC Copyright Infringement Cases, No. CV 17-6717 (WFK)(CLP), 2018 WL 3404142 (E.D.N.Y. July 11, 2018); Strike 3 Holdings, LLC v. Doe, No. CV 17-9654 (AT)(KNF), 2018 WL 1737217 (S.D.N.Y. Mar. 12, 2018); Strike 3 Holdings, LLC v. Doe, No. CV 18-777 (JRT/BRT), 2018 WL 2078707 (D. Minn. May 4, 2018); In re Strike Three Holding, LLC v. Doe, No. CV 18-00588 (MCE)(GGH), 2018 WL 2949827 (E.D. Cal. June 13, 2018); Strike 3 Holdings, LLC v. Doe, No. CV 17-07006-LB, 2017 WL 6594008 (N.D. Cal. Dec. 21, 2017); Strike 3 Holdings, LLC v. Doe, No. CV 17-02316(GPC)(KSC), 2018 WL 324264 (S.D. Cal. Jan. 5, 2018); Strike 3 Holdings, LLC v. Doe, No. CV 17-2347 (TJK), 2018 WL 385418 (D.D.C. Jan. 11, 2018).*

subpoena on . . . the Internet Service Provider . . . ." *Id.*; *see e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. CV 3:17-1680 (CSH), 2017 WL 5001474, at *6 (D. Conn. Nov. 1, 2017).

  B. <u>There Is Good Cause for this Court to Grant Plaintiff's Motion for Leave to Serve Its Subpoena</u>

    1. *Plaintiff's Complaint Makes A Prima Facie Claim for Direct Copyright Infringement*

To make a prima facie claim for copyright infringement, Plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 35–37.

Plaintiff owns a valid copyright in the Works, which are registered with the United States Copyright Office or have complete applications pending. *See* 17 U.S.C. § 410(c); *see also* Complaint at ¶¶ 31–33. Plaintiff's prima facie allegations of infringement are attested to by Plaintiff's investigator, IPP International U.G.'s employee, Tobias Fieser. *See* Exhibit "B." Finally, each digital file has been verified to be a copy of one of Plaintiff's copyrighted works. *See* Declaration of Susan Stalzer, Exhibit "D."

Plaintiff has also made a plausible prima facie showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Plaintiff's Complaint alleges that Doe Defendant not only downloaded Plaintiff's works over the

8

BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 38. "This is sufficient to state a prima facie claim*.*" *Strike 3 Holdings, LLC v. Doe*, No. CV 18-777 (JRT/BRT), 2018 WL 2078707, at *2 (D. Minn. May 4, 2018).

2. *Plaintiff Identifies the Limited and Specific Information Its Subpoena Seeks That Is Necessary to Serve Doe Defendant*

Plaintiff's Subpoena is limited and only "seeks concrete and narrow information: the name and address of the subscriber associated with [Doe Defendant's] IP address . . . ." *John Wiley & Sons, Inc. v. Doe*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012). "Courts have labeled the subscriber's identity and address as 'highly specific,' recognizing that Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims . . . ." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *3 (citations and internal quotations omitted).; *Malibu Media, LLC v. Doe*, No. CV 8:15-2313-T-17EAJ, 2015 WL 12850570, at *1 (M.D. Fla. Nov. 4, 2015) ("Plaintiff's request is specific in that it is limited to basic information such as Doe Defendant's name and addresses."). "Because the subpoena is sufficiently specific, the second principal factor weighs in favor of the Court granting Plaintiff's motion for leave to serve the subpoena." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *3.

3. *There Are No "Alternative Means" to Uncover Doe Defendant's True Identity*

At this early stage in litigation, "[t]he only information Plaintiff has regarding Defendant Doe is his IP address." *Id.* at *4. People using the internet are anonymous to the public, but the ISPs responsible for assigning any given IP address know who an address is assigned to and how to get in contact with them. Since there is no public registry of what IP addresses correspond to

which subscribers, Plaintiff's subpoena is necessary to advancing litigation. *See* Declaration of John S. Pasquale; *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. CV 16-1972, 2018 WL 650316, at *2 (4th Cir. Feb. 1, 2018) (noting "only the ISP can match the IP address to the subscriber's identity"); *Malibu Media, LLC v. Doe*, No. CV 8:15-2313-T-17EAJ, 2015 WL 12850570, at *1 (M.D. Fla. Nov. 4, 2015) ("If the information is erased, Plaintiff will be unable to link the IP address to Doe Defendant and pursue its infringement lawsuit.)".

There is simply no alternative means by which Plaintiff can identify Doe Defendant absent the present subpoena. Indeed, "BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address." *John Wiley & Sons, Inc.*, 284 F.R.D., at 190. "Plaintiff has established that good cause exists for it to serve a third-party subpoena on . . . the ISP identified in the complaint, because a Rule 45 subpoena to John Doe's ISP is the only way in which Plaintiff can identify John Doe and thus move forward with the case." *Malibu Media, LLC v. Doe*, No. CV 13–21579, 2013 WL 2950593, *1 (S.D .Fla. June 14, 2013).

"Moreover, the information the plaintiff seeks is time sensitive as ISPs do not retain user activity logs for an extended duration." *Malibu Media, LLC v. Doe*, No. CV 8:15-2295-T-24TGW, 2015 WL 12850568, at *1 (M.D. Fla. Oct. 28, 2015). "If the information is erased, Plaintiff will be unable to link the IP address to Doe Defendant and pursue its infringement lawsuit. In situations where 'time is of the essence,' courts have found good cause to grant expedited discovery." *Malibu Media*, No. CV 8:15-2313-T-17EAJ, 2015 WL 12850570 at *1 (citing *Arista Records LLC v. Does 1–7*, No. CV 3:08–18(CDL), 2008 WL 542709, at *1 (M.D. Ga. Feb. 25, 2008) (citation omitted)).

      4.  *The Subpoenaed Information Is Necessary to Advance Plaintiff's Infringement Claim*

As previously emphasized, Plaintiff cannot properly serve Doe Defendant without first ascertaining the subscriber's identity from his or her ISP. Judge Chin framed this factor aptly: "Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process." *Sony Music Ent't*, 326 F. Supp. 2d at 566. "Because learning the true identities of the pseudonymous individuals alleged to have violated Plaintiffs' copyrights is essential to their prosecution of this litigation, Plaintiffs have demonstrated their need for expedited discovery." *Arista Record*s, 589 F. Supp. 2d at 153. "[W]ithout identifying Doe Defendant, Plaintiff cannot issue a summons and serve Doe Defendant in this lawsuit. Without participation by Doe Defendant, there can be no meaningful Rule 26(f) conference." *Malibu Media*, No. CV 8:15-2313-T-17EAJ, 2015 WL 12850570 at *2.

      5.  *Defendant's Minimum Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights from Mass BitTorrent Infringers*

"[T]here is no expectation of privacy in 'subscriber information provided to an internet provider,' such as an IP address." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *5 (citation omitted); *see also Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566–67 (noting Plaintiffs are "entitled to discovery in light of" this minimal interest). "Although the Eleventh Circuit has not addressed whether the Fourth Amendment protects IP addresses,[5] other courts of appeal have held that it does not." *Levinson v. United States*, No. CV 14-81244, 2016 WL 5408165, at *2 (S.D. Fla. Sept. 28, 2016), *certificate of appealability denied*, No. CV 16-

---

[5] For a discussion on how IP address connect to and route Internet traffic, *see generally United States v. Steiger*, 318 F.3d 1039, 1042 (11th Cir. 2003) and articles cited within.

17548, 2017 WL 6760762 (11th Cir. May 11, 2017) (collecting cases). Indeed, courts throughout this Circuit have held that "Defendant does not have a reasonable expectation of privacy in [his or her] IP address . . . ." *United States v. Ryan Anthony Adams*, No. CR 6:16-11-ORL-40GJK, 2016 WL 4212079, at *4 (M.D. Fla. Aug. 10, 2016); *see also id.* at *3 ("Computer users lack a legitimate expectation of privacy in information regarding the to and from addresses for emails, the IP addresses of websites visited, the total traffic volume of the user, and other addressing and routing information conveyed for the purpose of transmitting Internet communications to or from a user."). Moreover, Plaintiff's central need for the subpoenaed for information, combined with its strong claim, substantially favors good cause. *See Arista Records*, 604 F.3d at 124 (finding Doe Defendant's "expectation of privacy for sharing copyrighted [works] through an online file-sharing network as simply insufficient to permit him to avoid having to defend against a claim of copyright infringement.").

As to free speech concerns, "[i]n cases where parties have argued that the First Amendment protected their anonymous speech in using their IP addresses, the Second Circuit has held that copyright infringers are not entitled to shield their identities from those who seek to enforce their claims under copyright law." *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *6 (listing examples). "[T]he Doe Defendant's First Amendment right to remain anonymous must give way to Plaintiff's right to use the judicial process to pursue its allegedly meritorious copyright infringement claim. Moreover, the Doe Defendant lacks the right under the Fourth Amendment to protect his IP address from revelation, where he has voluntarily shared such information with the Internet Service Provider. Plaintiffs will be granted leave to take early discovery to determine the identity of Defendant Doe." *Id.* "Courts routinely find the balance favors granting a plaintiff leave to take early discovery" of the materials sought by the Plaintiffs

here." *Arista Records*, 589 F. Supp. 2d 151 at 153 (*quoting UMG Recordings, Inc. v. Doe*, No. CV 08–1193, 2008 WL 4104214, at *4 & n. 3 (N.D. Cal. Sept. 3, 2008)).

  C. Protective Order

In some BitTorrent cases involving adult content, courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously. *See e.g.*, *Strike 3 Holdings*, No. CV 3:17-1680 (CSH), 2017 WL 5001474 at *6–7. To that end, Strike 3's Proposed Order contains a protective order shielding Doe Defendant's identity, and Plaintiff respectfully encourages the Court to establish any other procedures it deems appropriate.

**IV. CONCLUSION**

For the foregoing reasons, Strike 3 respectfully requests this Court grant leave to Strike 3 to issue a Rule 45 subpoena to Defendant's ISP.

**Dated: 11/27/2018**        Respectfully submitted,

                **FOX ROTHSCHILD LLP**
                *Attorneys for Plaintiff Strike 3 Holdings, LLC*

                By: /s/ *Joseph A. DeMaria*
                  **Joseph A. DeMaria, Esq., B.C.S.**
                  Florida Bar No. 764711
                  2 South Biscayne Boulevard
                  One Biscayne Tower, Suite 2750
                  Miami, FL 33131
                  Tel.: (305) 442-6540
                  jdemaria@foxrothschild.com